AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Apple iPhone<br>Seized as FP&F No. 2023565400003002 Line Item 0002<br>("Target Device") | Case No. '22 MJ4132 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Smuggling Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Carly A. Herbert, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Carly A. Herbert, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date: 11/10/2022

*Judge's signature*

City and state: San Diego, California        HON. Michael S. Berge U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Carly A. Herbert, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrants to search the following electronic devices:

> Blue Apple iPhone
> Seized as FP&F No. 2023565400003002 Line 0002
> **("Target Device")**

the **"Target Device"**, as further described in Attachment A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of Samuel SILLAS for transporting and moving illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for three years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for

search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point

operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations,

I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On November 8, 2022, Border Patrol Agents J. Rodriguez Galarza, F. Hurtado, A. Gumbs and Supervisory Border Patrol Agent O. Perez were performing their assigned duties in the Chula Vista Border Patrol Station's area of responsibility.

12. At approximately 9:00 AM, Agent Rodriguez Galarza observed a white sedan traveling on Alta Road, headed to an area known to Border Patrol Agents as "Triple Nickel." The white sedan, later identified as a Honda Accord, came to an immediate stop where Agent Rodriguez Galarza witnessed several individuals run out of tall brush, opened the Honda's passenger side door and got into the vehicle. The Honda made a U-turn and started traveling south on Alta Road. Via service radio, Agent Rodriguez Galarza advised Agent Hurtado of the vehicle direction of travel. Agent Hurtado responded and requested assistance from an agent in uniform to conduct a vehicle stop and continued to broadcast the Honda's location, direction of travel, and vehicle's driving behavior.

13. Agent Lopez responded to assist when the Honda passed his location and come to a stop at a red traffic light at the intersection of Otay Mesa Road and Leland Lane. Agent Hurtado was behind the Honda, Agent Lopez activated his vehicle's emergency lights and sirens to conduct a vehicle stop. Agent Lopez positioned his service vehicle towards the right side of the Honda and Agent Hurtado positioned his vehicle towards the left side of the Honda in an attempt to keep the Honda from fleeing. The driver of the Honda, later identified as defendant Luis David MURGUIA-De La Cruz, looked at Agent Hurtado and began to turn the steering wheel causing Agent Hurtado to abruptly turn his steering wheel counterclockwise to avoid the Honda as it bumped into his service vehicle to travel around a motorist positioned ahead at the intersection. Agent Hurtado immediately notified that the Honda bumped into his service vehicle to abscond from the vehicle stop.

14. Agent Gumbs responded to the area and observed the Honda drive through four traffic lights and notified agents that the Honda had crashed into the center median. As Agent Gumbs drove closer to the crashed Honda, he observed four individuals running from the wreckage.

15. Agent Hurtado arrived shortly after and pursued the four individuals on foot. Agent Hurtado was able to identify MURGUIA from the initial vehicle stop running along with another individual in a field. Agent Hurtado fell into a ditch line and encountered an

5

individual later identified as material witness Lazaro HERNANDEZ-Perez laying face down in the ditch line. Agent Hurtado ordered HERNANDEZ to remain where he was, while he went to pursue the other individuals. This area is approximately one mile north of the United States/Mexico International Boundary and one and a quarter mile east of the San Ysidro, California Port of Entry.

16. Agent Hurtado was able to catch up with MURGUIA and another individual, later identified as defendant, Samuel SILLAS. Agent Hurtado physically gained control of MURGUIA and SILLAS and brought them to the ground. Agent Hurtado identified himself as a Border Patrol Agent and at approximately 9:15 AM, Agent Hurtado placed MURGUIA and SILLAS under arrest.

17. At the time of arrest, a blue Apple iPhone **(Target Device)** was found on the defendant, Samuel SILLAS' person. SILLAS claimed the cell phone **(Target Device)** as his. This device was subsequently seized.

18. SILLAS was trying to manipulate his cell phone and Agent Hurtado attempted to swat the cellphone from SILLAS and inadvertently contacted SILLAS's face with an open hand. During the attempt to retrieve the cell phone from SILLAS, MURGIA wrapped his arms around Agent Hurtado's right leg. Agent Hurtado commenced in applying closed hand strikes to MURGUIA while ordering him to release his leg. MURGUIA subsequently released Agent Hurtado's leg and Agent Hurtado was able to handcuff MURGUIA and SILLAS together.

19. Other agents arrived and searched near Agent Hurtado's last known location of the fourth individual. The individual, later identified as material witness Rudyvit DOMINGUEZ-Vicente, was observed by other agents submitting with his hands up in the air. Agents escorted DOMINGUEZ to the location where the rest of the group had been sitting. Agent Hurtado performed an immigration inspection on HERNANDEZ and DOMINGUEZ. HERNANDEZ and DOMINGUEZ stated they are citizens of Mexico without immigration documents to allow them to enter, be in, or remain in the United States

6

legally. At approximately 9:35 AM, Agent Hurtado placed HERNANDEZ and DOMINGUEZ under arrest.

20. The defendant Samuel SILLAS was read his Miranda rights and stated that he understood his rights and was willing to speak without the presence of an attorney. SILLAS stated that he received an advertisement via Facebook for picking up "pollos", undocumented individuals, for $2,000 USD. SILLAS stated that he was in contact with the person who gave him GPS coordinates. SILLAS stated that his friend, MURGUIA was driving and when they arrived at the location he yelled out for the individuals to get in.

21. Material Witnesses, DOMINGUEZ, and HERNANDEZ stated they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. DOMINGUEZ stated that he agreed to pay a fee of $9,000 USD, to be smuggled into the United States, as part of his smuggling arrangement. HERNANDEZ stated that he was not going to be charged. DOMINGUEZ, and HERNANDEZ stated that they were receiving instruction on how to proceed through via cell phone. DOMINGUEZ, and HERNANDEZ stated that a white vehicle would be picking them up near the road where they were already waiting. DOMINGUEZ, and HERNANDEZ went on to say that as soon as they were driving off, Border Patrol units were already behind them. When shown a photographic lineup, HERNANDEZ was able to identify defendant, SILLAS, as the passenger of the vehicle.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that the defendant, Samuel SILLAS, was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for

7

individuals, such as the defendant, Samuel SILLAS, to attempt to minimize the amount of time he was involved in smuggling activities, and for the individual to be involved for weeks and months longer than he claims. Accordingly, I request permission to search the **Target Device** for data beginning on **October 8, 2022, through November 8, 2022**.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.

24. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephones and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days from the date this warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

27. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

28. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

29. Because the **Target Device** was seized at the time of Samuel SILLAS' arrest; and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from **October 8, 2022, through November 8, 2022**.

30. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Carly A. Herbert
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 10th day of November 2022.

_____
Hon. Michael S. Berg
United States Magistrate Judge

10

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Blue Apple iPhone
Seized as FP&F No. 2023565400003002 Line 0002
**("Target Device")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## **ATTACHMENT B**

### ITEM TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **October 8, 2022, through November 8, 2022**:

   a.   tending to indicate efforts to smuggle aliens from Mexico into the United States; and transport aliens inside the United States;

   b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.